UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SIMONE A.,

              Plaintiff,

      v.

KILOLO KIJAKAZI, Commissioner of
Social Security,

          Defendant.

Case No.  3:23-cv-05223-JSC

**ORDER REVERSING AND
REMANDING FOR FURTHER
PROCEEDINGS**

Re: Dkt. Nos. 11, 13

Plaintiff seeks social security benefits for the mental impairments of bipolar disorder, anxiety disorder/obsessive compulsive disorder, and autism spectrum disorder. (Administrative Record ("AR") 17.)  Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security denying her benefits claim.  After careful consideration of the parties' briefing, the Court concludes oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), REVERSES the ALJ's decision and REMANDS for further proceedings.  The ALJ's rejection of the medical evidence was not supported by substantial evidence and his rejection of Plaintiff's subjective symptom testimony was not supported by clear and convincing reasons.

## BACKGROUND

### A.    Procedural History

Pursuant to the Social Security Act, on September 2, 2020, Plaintiff filed a Title XVI application for supplemental security disability benefits alleging a disability onset date of February 1, 2020. (AR 61, 227.)  Plaintiff's application was denied initially and upon reconsideration. (AR 76, 95.)  Plaintiff submitted a timely request for a hearing before an

1  Administrative Law Judge (ALJ). (AR 119.) A telephonic hearing was held on September 7, 2022

2  where Plaintiff, who was represented by counsel, and a vocational expert testified. (AR 31-59.) On

3  September 28, 2022, the ALJ issued an unfavorable decision finding Plaintiff was not disabled

4  within the meaning of the Social Security Act. (AR 15-25.)

5    Plaintiff filed a timely request for review with the Appeals Council, which the Appeals

6  Council denied. (AR 1-3.) Plaintiff thereafter filed the underlying action. In accordance with Civil

7  Local Rule 16-5, the parties filed cross briefs on appeal. (Dkt. Nos. 11, 13.[1])

8    **B.**  **Issues for Review**

9     1. Did the ALJ err in evaluating the medical evidence?

10     2. Did the ALJ err in evaluating Plaintiff's subjective symptom testimony?

11     3. Did the ALJ err in disregarding the lay witness evidence?

12     4. Did the ALJ err at Step Five?

13     5. Should the Court remand for payment of benefits or further proceedings?

14          **LEGAL STANDARD**

15    A claimant is considered "disabled" under the Act if he meets two requirements. *See* 42

16  U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must

17  demonstrate "an inability to engage in any substantial gainful activity by reason of any medically

18  determinable physical or mental impairment which can be expected to result in death or which has

19  lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

20  423(d)(1)(A). Second, the impairment or impairments must be severe enough she is unable to do

21  her previous work and cannot, based on her age, education, and work experience, "engage in any

22  other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

23  To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential

24  analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2)

25  whether the claimant has a "severe medically determinable physical or mental impairment" or

26  combination of impairments that has lasted for more than 12 months; (3) whether the impairment

27

28  [1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

1  "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, she

2  can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to

3  other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), superseded by regulation on

4  other grounds; *see* 20 C.F.R. § 404.1520(a).

5  **DISCUSSION**

6  ## I.      MEDICAL OPINION EVIDENCE

7         Under the regulations that apply to Plaintiff's application, the Commissioner no longer

8  gives specific evidentiary weight to medical opinions, including the deference formerly given to

9  the opinions of treating physicians. Instead, the Commissioner evaluates the "persuasiveness" of

10 all medical opinions in the record based on: (1) supportability; (2) consistency; (3) relationship

11 with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical

12 source has familiarity with the other evidence in the claim or an understanding of our disability

13 program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c; *see also Woods v.*

14 *Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former

15 hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the

16 doctor's relationship with the claimant—no longer applies."). "Now, an ALJ's decision, including

17 the decision to discredit any medical opinion, must simply be supported by substantial evidence."

18 *Woods*, 32 F.4th at 787.

19        Supportability and consistency are the most important factors in evaluating the

20 persuasiveness of medical opinions. *See Woods*, 32 F.4th at 791 (citing 20 C.F.R. § 404.1520c(a)).

21 "Supportability means the extent to which a medical source supports the medical opinion by

22 explaining the relevant objective medical evidence." *Id*. at 791-92 (cleaned up) (citing 20 C.F.R. §

23 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is consistent with the

24 evidence from other medical sources and nonmedical sources in the claim." *Id*. at 792 (cleaned up)

25 (citing 20 C.F.R. § 404.1520c(c)(2)). The third factor—"relationship with the claimant"—

26 encompasses "the length and purpose of the treatment relationship, the frequency of examinations,

27 the kinds and extent of examinations that the medical source has performed, ... and whether the

28 medical source has examined the claimant or merely reviewed the claimant's records." *Id*. at 792

United States District Court<br>Northern District of California

3

United States District Court
Northern District of California

1  (citing 20 C.F. R. § 404.1520c(c)(3)(i)–(v)). The ALJ must explain how he considered

2  supportability and consistency, and may, but is not required, to explain how he considered factors

3  three, four, and five. *See id*. at 792; *see also* 20 C.F.R. § 404.1520c(b)(2).

4      The "ALJ cannot reject an examining or treating doctor's opinion as unsupported or

5  inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32

6  F.4th at 792 (cleaned up). "The agency must articulate how persuasive it finds all of the medical

7  opinions and explain how it considered the supportability and consistency factors in reaching these

8  findings." *Id*. (cleaned up) (citing 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

9      **A.     Dr. Bhandari and Psychiatric Nurse Horn**

10      Plaintiff contends the ALJ erred in his consideration of the opinions of her treating

11  providers Dr. Bhandari and Psychiatric Nurse Horn.

12      In July 2020, Nurse Horn completed a Mental Medical Source Statement for Plaintiff that

13  was co-signed by Dr. Bandari.  (AR 1308-1312.)  Nurse Horn had been treating Plaintiff on a

14  monthly basis for the preceding four months for bipolar disorder and depression.  (AR 1309.)  She

15  found Plaintiff had poor focus and concentration and heightened anxiety such that she was

16  markedly limited in understanding and memory, the ability to carry out detailed instructions,

17  ability to perform activities on a schedule, and the ability to complete a normal

18  workday/workweek without interruptions.  (AR 1310-1311.)   She concluded Plaintiff was

19  moderately limited in her ability to carry out short and simply instructions, maintain attention and

20  concentration for extended periods of time, sustain a normal routine without special supervision,

21  and make simple work-related decisions.  (AR 1310-1311.)  Nurse Horn found Plaintiff generally

22  had mild limitations with her social interactions except she moderately limited in her ability to

23  interact appropriately with the general public.  (AR 1311.)  Finally, as to her functional

24  limitations, Nurse Horn concluded Plaintiff was markedly limited in her understanding,

25  remembering, and applying of information, and her concentration, persistence, and pace, but

26  moderately limited in her ability to interact with others and adapt or manage herself.  (AR 1312.)

27  Plaintiff was likely to have good days and bad days and would be absent more than four days a

28  month.  (AR 1312.)  Four months later, in November 2020, Nurse Horn opined Plaintiff's ability

1    to understand, remember, and carry out complex instructions; maintain concentration, attention,

2    and persistence; and complete a normal workday and workweek without interruptions from

3    psychologically based symptoms were all poor.  (AR 318.)

4        The ALJ found these opinions

5            not persuasive because they are not consistent with or supported by
            the objective medical evidence indicating relatively normal findings
6            except occasional abnormalities, which are noted above. In addition,
            the treatment provided by both providers appears to be over a short
7            span of time and the opinions appear to be based on the claimant's
            self-report with no objective evidence to support them.

8

9    (AR 23.)  Plaintiff contends the ALJ erred in (1) discounting Nurse Horn and Dr. Bhandi's

10    opinions based on their reliance on Plaintiff's self-reports of her symptoms, and (2) failing to

11    specifically identify the objective evidence that contradicted their opinions.

12        There is a tension between the ALJ's reliance on Plaintiff's treating providers' opinions to

13    find severe impairments of bipolar/mood disorder, anxiety, and autism spectrum disorder, and his

14    finding these same opinions were not sufficiently supported with respect to the extent of her

15    limitations because they were based on Plaintiff's self-reports.  "A physician's opinion of

16    disability premised to a large extent upon the claimant's own accounts of his symptoms and

17    limitations may be disregarded where those complaints have been properly discounted."  *Buck v.*

18    *Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (citation omitted).[2]  As discussed below, the Court

19    finds the ALJ's rejection of Plaintiff's subjective symptom testimony is not supported by

20    substantial evidence.  Further, the ALJ implicitly accepted Plaintiff's self-reports at least in part

21    when he found they supported moderate limitations in understanding, remembering or applying

22    information; interacting with others, and concentrating, persisting or maintaining pace."  (AR 20.)

23    The ALJ erred in failing to explain why Plaintiff's self-reports were sufficient to find moderate

24    limitations in these categories, but insufficient to support the opinions of her treating providers.

25        As to the objective evidence, the ALJ did not identify the objective medical evidence

26    which was inconsistent with Dr. Bhandari and Nurse Horn's findings.  (AR 23.)  The Court,

27

28    _____
    [2] Although *Buck* and the cases upon which it relies were decided under the old standards, its
    reasoning applies equally to the "supportability" analysis under the new regulations.

United States District Court
Northern District of California

however, is mindful of its obligation to consider the totality of the ALJ's opinion.   In the section of his opinion discussing whether Plaintiff's impairments supported a listing, the ALJ consistently relies on Plaintiff's "normal" mental status examinations as a basis for rejecting her treating providers opinions regarding her marked limitations.  (AR 20.)  The ALJ appears to base the "normal" finding on (1) treatment notes indicating Plaintiff is "pleasant," "cooperative," and "attending well" during examinations; and (2) her performance on certain cognitive tests administered by the consultative medical examiner.  (AR 20.)  Neither is substantial evidence supporting the ALJ's finding.

First, that Plaintiff presented as pleasant and cooperative on some occasions must be viewed in the context of a "holistic view of the record." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). A few positive observations do not render a medical professional's diagnosis unsupported.  *See Smith v. Kijakazi*, 14 F.4th 1108, 1115 (9th Cir. 2021) ("Physician reports of improvement are [ ] not sufficient to undermine the repeated diagnosis of the alleged mental health conditions.") (cleaned up).  For example, while the ALJ cites to treatment notes indicating Plaintiff's mood was "better," the ALJ ignores the report from a week later stating: "Mood: "It's been pretty difficult."  (*Compare* AR 20 (citing AR 390 (6F at 14) *with* AR 398 (6F at 7).)  The symptoms of mental health conditions often "wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Moreover, reports of improvement must be examined in context—a relative improvement in a claimant's symptoms may not mean they are not disabled. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Nor does the actual evidence support the ALJ's conclusion.  For example, one of the pages cited by the ALJ as demonstrating her pleasant demeanor actually states "Attitude and Behavior: The claimant was pleasant but distraught. There were signs of psychomotor retardation."  (AR 369

(4F at 2); *see also* AR 316 (2F at 3) (indicating Plaintiff's memory was "impaired," her mood "anxious," and her affect "blunted."); AR 629 (10F at 168) ("I am having intense sedating side effects and feeling very depressed); AR 639 (6F at 169) ("unbearable manic feelings"; "it's been severe i'm just very good at hiding it sometimes"); AR 644 ("Feels unstable and in crisis. Medication works for them, but the doses are intolerable right now. Patient reported that her symptoms are very severe. Endorses manic symptoms, terror, anxiety, racing thoughts. Having suicidal thoughts, denies plans, means, or intent.").

Second, the ALJ's reliance on Plaintiff's performance on certain cognitive tests including the ability "to follow a 3-step command, recall five digits forward and backward, perform serial 7s correctly on the first attempt, and spell the work [sic] FORGET forward and backward" as a basis for the "normal" findings is not supported by substantial evidence.  (AR 20.)  The same examiner concluded Plaintiff was in the low average range for the Working Memory Index, Perceptual Reasoning Index, and her Processing Speed Index, and had a full scale IQ of 84.  (AR 370.)  The ALJ nonetheless found Plaintiff was no more than moderately limited in concentrating, persisting or maintaining pace because of "her relatively normal findings on mental status examinations." However, as discussed above, the ALJ's characterization of Plaintiff's findings as "normal" is not supported by substantial evidence.

***

In sum, the ALJ's rejection of the opinions of Plaintiff's treating providers Dr. Bhandari and Nurse Horn is not supported by substantial evidence.

## II.   SUBJECTIVE SYMPTOM TESTIMONY

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504

1   F.3d 1028, 1036 (9th Cir. 2007) (cleaned up). If the ALJ's assessment "is supported by substantial

2   evidence in the record, [courts] may not engage in second-guessing." *Thomas v. Barnhart*, 278

3   F.3d 947, 959 (9th Cir. 2002) (cleaned up).

4       Applying the two-step analysis, the ALJ first determined Plaintiff's "medically

5   determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 22.)

6   Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and

7   convincing reasons" for rejecting Plaintiff's testimony regarding the severity of her symptoms, or

8   else find evidence of malingering. *See Lingenfelter*, 504 F.3d at 1036. The ALJ did not find

9   evidence of malingering, but found Plaintiff's "statements concerning the intensity, persistence

10  and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and

11  other evidence in the record for the reasons explained in this decision." (AR 22.)

12      It appears the ALJ based this finding on Plaintiff's "normal" mental status examinations;

13  her "self-employment as a certified health coach;" her ability to obtain an undergraduate degree;

14  her presentation at the hearing; and her emails with her providers indicating she was not compliant

15  with her prescribed treatment.  (AR 22-23.)  The Court addresses each in turn.

16      First, as discussed above, substantial evidence does not support the ALJ's reliance on

17  "normal" findings as a basis for discounting Plaintiff's subjective symptom testimony.  While the

18  ALJ highlights portions of the record which describe "normal" findings, the ALJ ignores

19  statements—often from the very same visit—which document abnormal mood or affect.

20      Second, the ALJ's reliance on Plaintiff's "self-employment as a certified health coach" and

21  her "report[] she worked Mondays, Wednesdays, and Fridays and has had 10 clients" is likewise

22  not supported by substantial evidence.  (AR 22.)  While the ALJ does not cite anything in support

23  of this purported work history, the Commissioner cites four pages of the administrative record.

24  (Dkt. No. 13 at 9 (citing AR 369, 389, 502, 608).)  These pages, however, shed little light on

25  Plaintiff's employment.  They do not indicate anything about the work—how long she has done it,

26  how many hours a day she spends doing it, or critically, what the work actually involves.  To be

27  sure, evidence of a claimant's performance of work after the alleged onset of disability can

28  undermine the claim of disabling symptoms. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.

1    2006).  But here, substantial evidence does not support the ALJ's reliance on Plaintiff's self-

2    employment given the absence of any evidence regarding the work.

3          Third, the ALJ's reliance on Plaintiff's ability to obtain an undergraduate degree is also not

4    supported by substantial evidence.  True, Plaintiff completed her undergraduate degree, but the

5    ALJ ignores Plaintiff's testimony that she had to drop out of her undergraduate degree program in

6    New York when she started experiencing a manic episode and *after two years of treatment*, she

7    entered a bachelor completion program in California which provided "a lot of like support" such

8    that she was eventually able to complete her undergraduate degree.  (AR 39.)

9          Fourth, Plaintiff's emails to her providers demonstrating she was not compliant with her

10   prescribed treatment are not substantial evidence supporting the ALJ's discounting of Plaintiff's

11   subjective symptom testimony.[3]  An ALJ may discount a claimant's symptom testimony based on

12   the claimant's unexplained or inadequately explained failure to follow a prescribed course of

13   treatment.  *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). However,

14   when, as here, there is evidence the mental illness itself appears to be a cause of the claimant's

15   noncompliance, the AJL should address that possibility and explain why he is relying on the

16   claimant's noncompliance despite the fact it might be caused by Plaintiff's mental illness itself.

17   *See Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) ("[W]e do not punish the mentally ill

18   for occasionally going off their medication when the record affords compelling reason to view

19   such departures from prescribed treatment as part of claimants' underlying mental afflictions.").

20         Finally, to the extent the ALJ relied on Plaintiff having "presented very well during the

21   hearing by answering questions asked of her in a responsive and cogent manner," the ALJ does

22   not explain why this is a basis for discounting her subjective symptom testimony.  (AR 22.)  In

23   any event, "an ALJ's personal observations may be used only in 'the overall evaluation of the

24   credibility of the individual's statements'" and cannot "form the sole basis for discrediting a

25   _____

26   [3] The Commissioner's insistence that the ALJ did not cite these emails as a basis for his rejection
     of her symptom testimony, but only as an explanation for his RFC limitations, is unsupported by
27   the language of the ALJ's decision which includes no such explanation.  (*Compare* Dkt. No. 13 at
     10 *with* AR 23.)
28

United States District Court
Northern District of California

1   person's testimony." *Orn v. Astrue*, 495 F.3d 625, 639–40 (9th Cir. 2007) (quoting S.S.R. 96–7p

2   at 8).  Because the ALJ's other reasons for rejecting Plaintiff's testimony are not supported by

3   substantial evidence, the ALJ's personal observations standing alone cannot support the adverse

4   credibility finding.

5                                                    ***

6          In sum, the ALJ's rejection of Plaintiff's subjective symptom testimony does not satisfy

7   the "demanding" "clear and convincing standard." *Garrison*, 759 F.3d at 1013.

8   **III.    THE ALJ'S REJECTION OF THE LAY WITNESS TESTIMONY**

9          Plaintiff contends the ALJ erred in failing to discuss the third-party function report

10  submitted by her mothers.  (AR 229.)  The Commissioner counters that under the new regulations

11  the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources."

12  *See* 20 C.F.R. §§ 404.1520c(d).  The Ninth Circuit has "not yet addressed whether under the new

13  regulations an ALJ is still required to provide germane reasons for discounting lay witnesses."

14  *Stephens v. Kijakazi*, No. 22-35998, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023).  Instead, on

15  the two occasions the Ninth Circuit has been faced with the question, it had declined to decide the

16  issue under the harmless error doctrine.  *See id.*; *Kennedy v. O'Malley*, No. 22-35866, 2024 WL

17  242992, at *2 (9th Cir. Jan. 23, 2024).  Because, as discussed below, it is necessary to remand this

18  action to the ALJ, the Court declines to address this open question until there is a complete record.

19  On remand, the ALJ shall consider the totality of the evidence in reviewing Plaintiff's application.

20  **IV.    HARMLESS ERROR**

21         Given the lack of substantial evidence to support the ALJ's consideration of the medical

22  evidence and subjective symptom testimony, his decision cannot stand. The Court thus need not

23  consider Plaintiff's additional argument regarding the ALJ's step five determination. The ALJ's

24  errors here go to the heart of the disability determination and are not harmless. "[A] reviewing

25  court cannot consider the error harmless unless it can confidently conclude that no reasonable

26  ALJ, when fully crediting the testimony, could have reached a different disability determination."

27  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Had the ALJ not erred in

28  his consideration of the medical opinion evidence and determining Plaintiff's credibility, the ALJ

United States District Court
Northern District of California

1   could have reasonably come to a different conclusion regarding Plaintiff's capacity to work. *See*

2   *Stout*, 545 F.3d at 1056 (error was not harmless where crediting lay testimony supported a

3   conclusion the plaintiff's mental impairments would preclude him from returning to gainful

4   employment).

5   **V.   REMEDY**

6       Plaintiff asks the Court to remand the case for the payment of benefits or, alternatively, for

7   further proceedings. When courts reverse an ALJ's decision, "the proper course, except in rare

8   circumstances, is to remand to the agency for additional investigation or explanation*." Benecke v.*

9   *Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal citations omitted). A remand for an award of

10  benefits is proper however, "where (1) the record has been fully developed and further

11  administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide

12  legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;

13  and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to

14  find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017)

15  (internal citations and quotation marks omitted).

16      Here, prong one is not satisfied because the record has not been fully developed. Because

17  the ALJ erred in discounting Dr. Bhandi and Nurse Horn's opinions and rejecting Plaintiff's

18  subjective symptom testimony, there are outstanding issues that must be resolved before a final

19  determination can be made. Prong two has been satisfied because as discussed above, the ALJ

20  gave legally insufficient reasons for Dr. Bhandi and Nurse Horn's opinions, as well as Plaintiff's

21  subjective symptom testimony. The third prong is not satisfied because it is not clear from the

22  record the ALJ would be required to find Plaintiff disabled if the medical opinions were properly

23  evaluated and Plaintiff's symptom testimony was properly credited. For instance, to determine

24  Plaintiff's disability status, the ALJ should reconcile the conflicting medical opinions, and fully

25  develop the other evidence in the record, including Plaintiff's work activity.  Because the three

26  elements are not met, further proceedings are warranted.

27      //

28      //

United States District Court
Northern District of California

11

1

## CONCLUSION

2        For the reasons stated above, the Court REVERSES the ALJ's decision and REMANDS

3    for further proceedings consistent with this Order.

4        This Order disposes of Docket Nos. 11, 13.

5

6        **IT IS SO ORDERED.**

7    Dated: July 18, 2024

8

9    _____

10   JACQUELINE SCOTT CORLEY
     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California